**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| **SHANNON GRADY and JASON EMERSON,**<br>*Plaintiffs,*<br><br>**v.**<br><br>**COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF ENVIRONMENTAL PROTECTION, et al.,**<br>*Defendants.* | **Civ. No. 26-0068** |

**<u>MEMORANDUM</u>**

**Costello, J.**                                              **July 16, 2026**

"The only way whereby any one divests himself of his natural liberty, and puts on the bonds of civil society, is by agreeing with other men to join and unite into a community for their comfortable, safe, and peaceable living one amongst another, in a secure enjoyment of their properties, and a greater security against any, that are not of it."

John Locke, *Second Treatise of Government* § 95 (1690)

\*   \*   \*

As members of communities, and citizens of the United States, each of us enters into the so-called "social contract."  We voluntarily depart with some of our natural liberties in exchange for the protection of the rule of law.  Indeed, it is the rule of law that allows us to enjoy our life, liberty, and property rights, and protect them against the actions of the government and fellow citizens alike.

Pro se Plaintiffs Shannon Grady and Jason Emerson ("Plaintiffs") own and live on a 24-acre property in Chester Springs, Pennsylvania ("the Property").  ECF No. 8 ¶ 15.  The Property contains Plaintiffs' family home where they live with their five children.  *Id.*  Plaintiffs use the Property for what they describe as "Naturalist religious practices," including "living a holistic, nature-based, self-sustaining . . . lifestyle"; keeping "free-ranging livestock with unrestricted

access of grazing and natural-springs"; and "natural use of their private land and water[.]" *Id.* ¶ 20.

In 2021, without obtaining any permits or consulting with local environmental authorities, Plaintiffs built a one-acre pond on the Property. They also built a driveway culvert that was essentially a bridge over a moving tributary. Defendant the Commonwealth Department of Environmental Protection ("DEP") subsequently received complaints of an earth disturbance on the Property. After investigating the complaints, DEP found that the Property was in violation of the Commonwealth's Clean Streams Law (35 P.S. §§ 691.1-691.1001), the Dam Safety and Encroachments Act (32 P.S. §§ 693.1-693.27), and other state environmental regulations.

After years of attempting to work with Plaintiffs to bring the Property into compliance with these laws, DEP issued an administrative order requiring Plaintiffs to make certain modifications to the Property and consent to further inspections (the "Administrative Order"). Plaintiffs did not comply with the Administrative Order, nor did they exercise their right to challenge its terms via DEP's appellate process. DEP then successfully sought enforcement of the Administrative Order in the Commonwealth Court.

Plaintiffs now bring this action against DEP and three DEP employees involved in the investigation into the Property (Defendants Canigiani, Buterbaugh, and Page) (together, the "Individual Defendants"). Plaintiffs seek reprieve from the requirements of the Administrative Order. They also seek damages for alleged constitutional violations they claim occurred during DEP's investigation into the Property.

Plaintiffs' claims suffer from two foundational flaws. First, Plaintiffs fundamentally misunderstand the nature and scope of their property rights. As citizens of the Commonwealth of Pennsylvania, Plaintiffs enjoy the protection of its laws. These laws permit Plaintiffs to raise

their family on the Property and use it to pursue their Naturalist religious practices.  But Plaintiffs' property rights are not absolute.  Just like every other citizen of the Commonwealth, Plaintiffs must heed the laws and regulations that govern their community—including those that preserve the cleanliness and safety of public waters.  In other words, Plaintiffs cannot reap the benefits of the law while refusing to abide by it.

Second, Plaintiffs cannot pick and choose which legal processes apply to them.  Plaintiffs had every opportunity to challenge the Administrative Order and raise their federal constitutional claims before DEP's appellate body and the Commonwealth Court.  Plaintiffs deliberately avoided litigating in these state forums based on their own conclusory belief that doing so would violate their constitutional rights.  They now ask this Court to decide their claims in the first instance.

The Court declines to do so.  Plaintiffs' claims against DEP are barred by the Eleventh Amendment.  Their remaining claims against the Individual Defendants are barred by *res judicata* because they are duplicative of the claims they can and should have brought in the state forums.  For these reasons, the Court will grant Defendants' motion to dismiss this action in its entirety.

## I.  BACKGROUND

### A.  The Property & Plaintiffs' Modifications

Plaintiffs allege that on September 1, 2021, Hurricane Ida hit Pennsylvania, causing "catastrophic flooding" that placed "Plaintiffs' family and property in imminent danger."  ECF No. 8 ¶ 18.  Plaintiffs allege that, in response to this emergency, they "took immediate action necessary to protect their family, livestock, . . . and property from imminent threat and storm damage."  *Id.* ¶ 19.  Plaintiffs' pleadings do not outright say what these actions were.  Instead,

they vaguely describe them as "clearing debris and maintaining their existing private ingress/egress to ensure safe access for emergency vehicles." *Id.*

Defendants are the first to actually explain the modifications Plaintiffs made to the Property. According to Defendants, prior to Hurricane Ida, Plaintiffs "constructed a pond exceeding one acre of earth disturbance." ECF No. 27-2 at 5; *see also* ECF No. 42 at 1-2 (explaining that the creation of the pond predates the hurricane); ECF No. 37-5 at 2 (DEP earth disturbance report showing photographs of pond prior to hurricane). After Hurricane Ida, Plaintiffs built a driveway culvert obstructing an unnamed tributary on the Property "that was essentially part of a bridge over moving water." ECF No. 27-2 at 5; ECF No. 37-5 at 4 (showing photographs of culvert).

### B.    DEP's Investigation

DEP and the Chester County Conservation District ("CCCD") received several complaints of an earth disturbance on the Property. DEP conducted an inspection on October 5, 2021 in response to those complaints. ECF No. 8 ¶¶ 21-22(a). A report from that inspection explained that the pond was constructed on over an acre of land without the requisite permit or stabilization of the surrounding areas. ECF No. 27-2 at 5-6 (citing ECF No. 37-2 at 2-3). The report also revealed that Plaintiffs installed an unpermitted driveway culvert over the tributary without a plan to mitigate erosion and sedimentation risks. *Id.* The report identified additional violations of the Clean Streams Law and other DEP regulations. *Id.* DEP advised Plaintiffs that they needed to take certain corrective actions and cautioned that "'failure to do so may result in administrative, civil, and/or criminal actions.'" *Id.* (quoting ECF No. 37-2 at 2-3).

"Subsequent investigations of the Property conducted on March 25, 2022, May 3, 2022, and July 5, 2022, identified ongoing violations. The resultant inspection reports again advised

4

[Plaintiffs] that failure to take corrective action may result in administrative, civil, and/or criminal actions."  ECF No. 37-2 at 3.  DEP conducted an additional search pursuant to an administrative warrant on April 5, 2024.  ECF No. 8 ¶¶ 29-30 (alleging that Defendants Canigiani, Buterbaugh, and Page presented Plaintiffs with a document purporting to be a search warrant); ECF No. 27-2 at 17 (explaining that "DEP and its duly authorized agents may make investigations and searches as deemed necessary to carry out the purposes of the Dam Safety and Encroachments Act") (citing 32 P.S. § 693.16).

Plaintiffs did not comply with any of the measures outlined in the inspection reports. Plaintiffs imply, but stop short of alleging, that the reason they did not comply is because DEP failed to follow standard investigating protocols.  *See, e.g.*, ECF No. 8 ¶ 24 (alleging that "DEP never collected a single soil sample or water sample from Plaintiffs' Property for laboratory analysis"); *id.* ¶ 26 (alleging that DEP "departed from its own standard investigative protocols" in investigating Plaintiffs' Property); *id.* ¶ 28 (alleging that DEP never issued a public health advisory notifying of any risk to public safety from the Property).

Defendants represent that they "attempt[ed] to work with Plaintiffs for almost three years" and were "repeatedly ignored and rebuffed[.]"  ECF No. 27-2 at 6.

###### C.    The Administrative Order

On July 11, 2024, DEP issued an Administrative Order against Plaintiffs outlining their violations of the Clean Streams Law, the Dam Safety and Encroachments Act, and DEP regulations at 25 Pa. Code Chapters 102 and 105.  ECF No. 8 ¶ 36; *see also* ECF No. 37 at 66-82 (Administrative Order).  The Administrative Order Required Plaintiffs to take the following corrective actions:

5

- Cease all earth disturbance activities and stabilize all exposed areas to 70% vegetative cover;
- Submit a complete NPDES permit application to CCCD;
- Comply with all requirements of the NPDES permit once issued;
- Submit a joint permit application to DEP for the driveway crossing;
- Obtain DEP permit approval before constructing any replacement crossing;
- Hire a certified wetlands specialist to identify and delineate wetlands;
- Submit a wetlands restoration plan for DEP approval;
- Conduct wetlands monitoring by a professional wetland scientist twice yearly for two years, then annually for three additional years; and
- Allow DEP and CCCD to conduct a final inspection.

ECF No. 8 ¶ 37; ECF No. 37 at 79-81.

Plaintiffs allege that compliance with these requirements "would force Plaintiffs to: (a) enter into at least four separate contracts with government agencies and private contractors; (b) hire multiple specialists . . . engineers, and environmental consultants; (c) perform extensive physical labor over a five-year period; and (d) expend between $500,000 and $800,000 based on prevailing rates for the required services." ECF No. 8 ¶ 38. Plaintiffs further allege multiple legal deficiencies with the Administrative Order, including that it was not properly served and that DEP lacked jurisdiction over Plaintiffs' "private, non-commercial residential property." *See id.* ¶¶ 39-45.

### D. Commonwealth Court Proceedings

Plaintiffs did not cooperate with the terms of the Administrative Order, so DEP sought enforcement in the Commonwealth Court. *See id.* ¶ 47; ECF No. 37 at 1-26 (enforcement petition). Plaintiffs responded with a new matter (the "New Matter") alleging that they faced selective enforcement of laws and equal protection violations, due process violations, excessive fines, had their "right to be free from government trespass and unreasonable searches" violated, and were the targets of civil conspiracies. *See generally* ECF No. 37-1. Plaintiffs also asserted

6

that they were denied a trial by jury, which they claim they are entitled to under the Pennsylvania Constitution. *Id.* at 27.

The Commonwealth Court upheld the legality and legitimacy of the Administrative Order. *See generally* ECF No. 37-2. However, it reached its decision on the limited grounds that Plaintiffs failed to appeal the issuance of the Administrative Order to DEP's appellate body, the Environmental Hearing Board (the "EHB"). *Id.* at 5-6. The Commonwealth Court explained that its jurisdiction in enforcement proceedings is "limited." *Id.* at 5. "In this case, it was specifically limited by virtue of the fact that [Plaintiffs] had not appealed the Administrative Order" and therefore "may not thereafter attack the enforcement order's validity or content." *Id.* (citing *Dep't of Env't Res. v. Wheeling-Pittsburgh Steel Corp.*, 375 A.2d 320, 324 (Pa. 1977) and *Dep't of Env't Prot. v. Peters Twp. Sanitary Auth.*, 767 A.2d 601 (Pa. Commw. 2001)). It accordingly struck Plaintiffs' New Matter raising the alleged constitutional violations and never reached the merits of those claims. *See id.* at 1-2. The Court merely held that DEP issued an Administrative Order, Plaintiffs failed to comply with the terms of the Order, and that Plaintiffs were required to do so. *Id.* at 5-8.

Plaintiffs appealed to the Supreme Court of Pennsylvania. The petition was denied. *See* ECF No. 27-2 at 7 (citing Supreme Court of Pennsylvania Docket No. 363 MAL 2025).

### E.    The Present Action

Plaintiffs filed this action in January of 2026. *See generally* ECF No. 1. The Complaint raises seven causes of action under 42 U.S.C. § 1983: (Count I) "As-Applied Constitutional Challenge to DEP Administrative Process," alleging violations of the Fifth, Seventh, and Fourteenth Amendments against DEP only; (Count II) "Violation of Seventh and Fourteenth Amendments – Denial of Right to Trial by Jury" against all Defendants; (Count III) "Violation of

Fourth Amendment – Unreasonable Searches and Trespass" against the Individual Defendants; (Count IV) "Violation of Fifth and Fourteenth Amendments – Deprivation of Property without Due Process; Taking without Just Compensation" against all Defendants; (Count V) "Violation of Fourteenth Amendment – Selective Enforcement/Equal Protection" pursuant to "As-Applied Constitutional Challenge to DEP Administrative Process," alleging violations of the Fifth, Seventh, and Fourteenth Amendments against DEP only; (Count VI) "Violation of Eighth Amendment – Excessive Fines and Cruel and Unusual Punishment" against all Defendants; and (VII) "Civil Conspiracy under Color of Law" against the Individual Defendants.

Plaintiffs filed a motion for a temporary restraining order and/or a preliminary injunction. *See generally* ECF No. 12. They sought an order enjoining Defendants from enforcing the Administrative Order and initiating or pursuing contempt proceedings, fines, sanctions, liens, or any other enforcement action. *See id.* The Court held a phone conference with the parties on February 10, 2026, during which Defendants represented that they would not engage in any enforcement actions pending the resolution of Plaintiffs' motion for injunctive relief. ECF No. 25.

Defendants opposed Plaintiffs' motion for injunctive relief and concurrently moved to dismiss all claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). *See generally* ECF Nos. 27 and 28. Defendants raise six arguments in support of their motion to dismiss. First, Eleventh Amendment immunity bars Plaintiffs' claims against DEP. ECF No. 27-2 at 8-9. Second, DEP is not a "person" subject to suit for damages under Section 1983. *Id.* at 9-10. Third, Plaintiffs are attempting to circumvent the decision of the Commonwealth Court enforcing the Administrative Order in contravention of the *Rooker-Feldman* doctrine. *Id.* at 10-12. Fourth, Plaintiffs cannot challenge the Administrative Order because they failed to exhaust their

8

administrative remedies by electing not to appeal to the EHB. *Id.* at 12-15. Fifth, the claims against Defendant Page should be dismissed because Plaintiffs have not pleaded facts showing his personal involvement in the alleged wrongdoing as required under Section 1983. *Id.* at 16. Sixth, Plaintiffs have failed to state claims upon which relief may be granted for their Fourth, Fifth, Eighth, and Seventh Amendment claims and for their civil conspiracy claim. *Id.* at 16-24.

Plaintiffs opposed the motion, raising seven arguments. First, DEP exceeded its delegated authority in issuing the Administrative Order, so it is void regardless of the Commonwealth Court's findings. *See* ECF No. 33 at 4. Second, participation in DEP's administrative processes and proceedings were unconstitutional under *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), which held that the Seventh Amendment right to a jury trial applies to certain administrative actions that share characteristics of common law claims. *Id.* at 5-6, 9. Third, Eleventh Amendment immunity does not extend to Plaintiffs' claims for prospective injunctive relief against state officials for ongoing violations of federal law under *Ex Parte Young*, 209 U.S. 123 (1908). *Id.* at 10-11. Fourth, DEP is subject to suit under Section 1983 because Plaintiffs only bring claims for injunctive relief against DEP. *Id.* at 12. Fifth, *Rooker-Feldman* is inapplicable because Plaintiffs' claims are of an "independent federal character[.]" *Id.* at 12-14. Sixth, exhaustion of administrative remedies is not a prerequisite to bring suit under Section 1983 and regardless, exhaustion here would be futile. *Id.* at 14-15. Seventh, Plaintiffs have alleged sufficient facts against Defendant Page and sufficient facts to support their various constitutional and conspiracy claims. *Id.* at 15-23.

The Court held oral argument on Defendants' motion to dismiss. ECF No. 39. At the close of argument, Defendants agreed to stay enforcement of the Administrative Order pending this Court's resolution of their motion. ECF No. 44 at 81:6-24. The Court also ordered the

9

parties to submit supplemental briefing on the applicability of *Burford* abstention to this action and whether Plaintiffs' failure to appeal to the EHB bars Plaintiffs' federal claims under the doctrine of *res judicata*, or "claim preclusion." *Id.* at 82:20-83:4.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

The Eleventh Amendment is "a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. Hosp. v. Halderman*, 465 U.S. 89, 98-100 (1984)).  Rule 12(b)(1) governs challenges to a complaint based on lack of subject-matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Thus, Rule 12(b)(1) serves as the proper means by which to challenge the propriety of federal jurisdiction by reason of the Eleventh Amendment." *Kliesh v. Redevelopment Auth. of Bucks Cnty.*, 21cv733, 2023 WL 2163842, at *3 (E.D. Pa. Feb. 22, 2023); *accord Blanciak*, 77 F.3d at 694 n.2.

### B.     Rule 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible if the plaintiff pleads facts sufficient to support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  At the pleading stage, the Court accepts all factual allegations as true and construes the complaint in the light most favorable to the plaintiff. *Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017).  Pro se filings like the one at issue here must be construed "liberally." *Montanez v. Price*, 154 F.4th 127, 140 (3d Cir. 2025).

10

## III.      DISCUSSION

### A.      Immunity & Abstention

Before turning to the merits of Plaintiffs' claims, the Court must be satisfied that it has jurisdiction to hear them. *Wyrough & Loser, Inc v. Pelmor Labs., Inc.*, 376 F.2d 543, 547 (3d Cir. 1967) ("preliminary" jurisdictional issues "should be raised and disposed of before the court considers the merits"); *see also Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 552 (2005) (federal courts are "courts of limited jurisdiction [and] possess only that power authorized by the Constitution and statute") (internal quotations omitted). The Court must also be satisfied that, even if it has jurisdiction, it should exercise it. The Supreme Court has recognized a variety of abstention doctrines permitting federal district courts to decline to exercise jurisdiction over certain cases implicating federalism concerns, including those touching on issues of particular import to a state and its policies. Accordingly, the Court will begin by addressing Defendants' jurisdictional arguments, then consider whether abstention is appropriate.

### 1.      Eleventh Amendment Immunity

#### a.      *Scope & Applicability*

"Eleventh Amendment immunity is a 'threshold, nonmerits issue[.]'" *Merritts v. Richards*, 62 F.4th 764, 772 (3d Cir. 2023) (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 433 (2007)). Thus, the Court must first evaluate whether the Eleventh Amendment deprives it of jurisdiction to preside over this case.

The Eleventh Amendment provides that states are immune from any lawsuit "commenced or prosecuted against" them by private citizens of other states or foreign countries. U.S. Const. Amend. XI. This immunity applies to "unconsented suits brought by a State's own citizens." *Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Under the Eleventh Amendment, states and arms

11

of the states are generally immune from federal suit absent consent by the state or congressional abrogation. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 279-81 (1997); *Geness v. Admin. Off. of Pa. Cts.*, 974 F.3d 263, 269 (3d Cir. 2020), *cert. denied*, 141 S. Ct. 2670 (2021).

Plaintiffs bring Section 1983 claims against DEP, an executive agency of the Commonwealth. 71 P.S. §§ 61(a), 732-102. DEP is therefore immune from suit under the Eleventh Amendment absent consent or abrogation. *See Geness*, 974 F.3d at 269. There is no consent or abrogation here. Pennsylvania has expressly withheld its consent to be sued in federal court. *Lavia v. Pa. Dep't of Corr.*, 224 F.3d 190, 195 (3d Cir. 2000) (citing 42 Pa. C.S. § 8521(b)). That extends to DEP as an executive agency of the Commonwealth of Pennsylvania. *See* 71 P.S. §§ 61(a), 732-102; *Geness*, 974 F.3d at 269. Moreover, "Congress did not abrogate Eleventh Amendment immunity via § 1983." *Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020).

### b.      *Ex Parte Young*

Plaintiffs nevertheless argue that the *Ex Parte Young* exception to Eleventh Amendment immunity applies here because they are seeking "prospective injunctive relief against state officials for ongoing violations of federal law." ECF No. 33 at 6.

Plaintiffs are mistaken. *Ex Parte Young* applies only to individual defendants who are officers of the state. It does not apply to a state or its agencies. *Kowslow v. Commonwealth of Pa.*, 302 F.3d 161, 178 (3d Cir. 2002); *Frompovicz v. Pa. Dep't of En't Prot.*, 17cv2790, 2018 WL 1444168, at *3 (E.D. Pa. Mar. 22, 2018) ("the doctrine does not apply where the defendant claiming immunity is not a state officer, but the state itself"). Defendants only move to dismiss the claims against DEP based on Eleventh Amendment immunity, not the claims against the Individual Defendants. *See* ECF No. 27-2 at 8-9.

12

The Court will therefore dismiss Plaintiffs' claims against DEP (Counts I, II, IV, V, and VI) because they are barred by the Eleventh Amendment. *See M & M Stone Co. v. Pa. Dep't of Env't Prot.*, 7cv04784, 2008 WL 4467176, at \*15 (E.D. Pa. Sept. 29, 2008) (dismissing claims against DEP on Eleventh Amendment immunity grounds).

### 2.     *Rooker-Feldman* Doctrine

The Court must next decide whether it should exercise its jurisdiction to review the remaining claims against the Individual Defendants (Counts II, III, IV, V, and VI).  Defendants argue that the Court should decline to exercise jurisdiction under the *Rooker-Feldman* doctrine. ECF No. 27-2 at 10-12.

"The *Rooker-Feldman* doctrine prevents district courts from mistakenly relying on their original jurisdiction to engage in appellate review of state-court orders." *Merritts*, 62 F.4th at 774.  This doctrine "merely recognizes that 28 U.S.C. § 1331 is a grant of original jurisdiction," but does not provide appellate review over state-court judgments, as Congress reserved that authority to the Supreme Court. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002).

There are four conditions which must be satisfied for dismissal to be appropriate under *Rooker-Feldman*. *Merritts*, 62 F.4th at 774.  First, the federal plaintiff must lose in a state-court judicial proceeding.  Second, the state-court judgment or decree must be rendered prior to the federal action being filed.  Third, the federal plaintiff must invite the review and rejection of the state-court judgment.  Fourth, the federal plaintiff must complain of injuries caused by the state-court judgment. *Id.* (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) and *Great W. Mining & Min. Corp. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010)).

a.      *State-Court Loser Status*

The state-court loser requirement "limits appellate jurisdiction to the review of proceedings that were judicial in character, and not 'legislative, ministerial, or administrative decisions.'"  *Id.* (quoting *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 479 (1983)).  The federal plaintiff must have been a party to that state-court judicial proceeding and received an adverse ruling.  *Id.* (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006)).

Plaintiffs argue that the *Rooker-Feldman* doctrine does not apply because their complaint challenges the "void proceedings"—seemingly referencing the administrative proceedings resulting in DEP issuing the Administrative Order.  ECF No. 33 at 8.  Plaintiffs are wrong.  Defendants brought a Commonwealth Court action to enforce the Administrative Order.  *See generally* ECF No. 37.  That action was a qualifying "judicial" proceeding.  *See Merritts*, 62 F.4th at 774.  Plaintiffs received an adverse ruling in those proceedings because the Commonwealth Court granted Defendants' Petition and ordered Plaintiffs to comply with the terms of the Administrative Order "without limitation."  ECF No. 37-2 at 6.

b.      *Timing of State-Court Judgment*

Next, the federal suit must have been filed after the state-court judgment was rendered.  *Merritts*, 62 F.4th at 776.  The Third Circuit requires "an effectively final state-court judgment to precede the federal suit."  *Id.* (internal quotations omitted).  The Commonwealth Court rendered a final judgment by granting Defendants' petition to enforce the Administrative Order.  *See* ECF No. 37-2 at 6.  The Pennsylvania Supreme Court denied Plaintiffs' appeal of that decision.  *See generally* ECF No. 37-12.  Accordingly, this element of the *Rooker-Feldman* test is satisfied.

14

c.      *Inviting Review*

Defendants argue that "the issues raised by Plaintiffs in the instant amended complaint were already raised by them before the Commonwealth Court." ECF No. 27-2 at 11. But Defendants fail to recognize that the Commonwealth Court struck Plaintiffs' New Matter, which raised state versions of the federal constitutional claims they assert in this federal action. *See* ECF No. 37-2 at 1-2. Moreover, because Plaintiffs did not appeal the Administrative Order, the Commonwealth Court could not reach Plaintiffs' claims on the merits. *Id.* at 5 ("The Court's review . . . was specifically limited by virtue of the fact that Respondents had not appealed the Administrative Order" and therefore Plaintiffs could not "thereafter attack the enforcement order's validity or content.").

Plaintiffs could and should have raised their constitutional claims to the EHB. *See M & M Stone*, 2009 WL 3245460, at *10 (explaining that the EHB "has the authority to hear and rule upon federal Constitutional claims") (internal quotations omitted). Had they done so, the Commonwealth Court could have reached those claims on the merits. *See* ECF No. 37-2 at 5. Plaintiffs' request for this Court to review claims that should have been appealed and reviewed by a state administrative agency and then a state court is essentially a request for the Court to engage in *de novo* appellate review. *See Verizon Md., Inc.*, 535 U.S. at 644 n.3 (federal district courts may not engage in appellate review of state court decisions).

However, it is not clear to the Court that the "inviting review" element of the *Rooker-Feldman* doctrine is satisfied where arguments were not *actually* raised and substantively decided in the state-court action. "The Supreme Court has repeatedly emphasized . . . that *Rooker-Feldman* is a narrow doctrine and has admonished lower federal courts for applying the rule beyond its strict confines." *Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith,*

15

*Inc. v. Patterson*, 527 F. Supp. 3d 722 (E.D. Pa. 2021), *aff'd sub nom. Trs. of Gen. Assembly of Church of Lord Jesus Christ of Apostolic Faith, Inc. v. Patterson*, No. 21-1662, 2021 WL 6101254 (3d Cir. Dec. 21, 2021) (citing *Lance v. Dennis*, 546 U.S. 459, 464 (2006) and *Exxon Mobil Corp*, 544 U.S. at 283).  Thus, while this case implicates many of the animating principles behind the *Rooker-Feldman* doctrine, the Court will not abstain on these grounds.

3.      <u>*Burford* Abstention</u>

The Court asked the parties to brief whether abstention would also be appropriate here under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943).  This doctrine promotes the proper state-federal balance by protecting "complex state administrative processes from undue federal interference."  *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 362 (1989).  *Burford* permits federal abstention in state administrative proceedings under two specific circumstances:  (1) when there are "difficult questions of state law bearing on policy problems of substantial public import"; or (2) where federal review would disrupt "state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Merritts*, 62 F.4th at 773 (internal quotations omitted).

The Court agrees with Defendants that both scenarios are present here.  This dispute arises from Defendants' attempts to administer and enforce Pennsylvania's laws and regulations promoting safe and clean water and waterways.  *See* ECF No. 42 at 6-7 (detailing each law and regulation implicated by the Administrative Order).  These are difficult legal and policy questions that impact the health, safety, and economic vibrancy of the Commonwealth and its citizens.  *See id.* at 5 (explaining that the laws and regulations Defendants are enforcing against Plaintiffs promote manufacturing and industry, the safe enjoyment of outdoor activity, and the

16

elimination of water pollution and soil erosion).  The federalism concerns underpinning *Burford*

abstention are undoubtedly implicated by this action.

However, *Burford* abstention only applies to claims for equitable relief.  *Merritts*, 62

F.4th at 773 ("Abstention doctrines are rooted in federal courts' historical equitable powers, and

when a federal plaintiff prays for damages, the equitable discretion upon which abstention rests

does not permit dismissal.") (citing *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 190

(1959)).  The only claims not barred by Eleventh Amendment immunity seek monetary damages

from the Individual Defendants.  *See* ECF No. 8 ¶¶ 102, 116, 133, 144, 155.  The Court

accordingly cannot abstain from deciding these claims under *Burford*.  *See Merrits*, 62 F.4th at

773-74 (district court erred in abstaining under *Burford* because plaintiff's Section 1983 claims

against individual defendants sought damages).

**B.    Other Bases for Dismissal**

The remainder of Plaintiffs' claims fail for another reason—Plaintiffs chose to

purposefully evade the administrative appeal process, where they could have brought the same

federal constitutional challenges to the Administrative Order they raise here.

1.    Failure to Exhaust Administrative Remedies

Defendants frame Plaintiffs' decision not to appeal to the EHB as a failure to exhaust

administrative remedies and ask the Court to dismiss on those grounds.  *See* ECF No. 27-2 at 12-

15.  However, Defendants cite *state* case law for the proposition that individuals wishing to

challenge DEP actions must appeal to the EHB, and if they do not, they have failed to exhaust

their administrative remedies.  *See id.* (citing, e.g., *Funk v. Com. Dep't of Env't Prot.*, 71 A.3d

1097, 1101 (Pa. Com. Ct. 2013)).  But Defendants fail to recognize that generally, "plaintiffs

17

pursuing civil rights claims under [Section 1983] need not exhaust administrative remedies before filing suit in court." *Porter v. Nussle*, 534 U.S. 516, 523 (2002).

Exceptions to this general rule exist where abridged by statute, for instance, under the federal Prison Litigation Reform Act, which expressly requires exhaustion via prison grievance procedures. *Id.* at 524-25. But the Court is not aware of any exceptions to that rule applicable here. Dismissal on these grounds is therefore inappropriate.

2.    *Res Judicata*

The Court asked the parties to submit supplemental briefing on whether the doctrine of *res judicata*, also known as "claim preclusion," would bar Plaintiffs' federal claims. *Res judicata* "bars a party from initiating a second suit against the same adversary based on the same 'cause of action' as the first suit." *Duhaney v. Att'y Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). This doctrine reflects the public policy of finality in litigation; "that those who have contested an issue be bound by the result of the contest[.]" *Baldwin v. Traveling Men's Ass'n*, 283 U.S. 522, 525 (1931). When parties "have had a full and fair opportunity to litigate," claim preclusion protects against "the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153-54 (1979).

a.    *Applicability & Governing Law*

The Full Faith and Credit Statute, 28 U.S.C. § 1738, requires federal district courts to give the same preclusive effect to a state court judgment as the adjudicating state. *Sec'y United States Dep't of Lab v. Kwansy*, 853 F.3d 87, 94 (3d Cir. 2017). This applies to decisions of state administrative agencies that have been reviewed by state courts. *McLaughlin v. Fisher*, 277 Fed.

App'x 207, 214 (3d Cir. 2008) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466-67 (1982)).

Federal courts must look to state law to determine the preclusive effect of a prior state-court judgment. *Kwansy*, 853 F.3d at 94. Thus, the Court will look to Pennsylvania law on claim preclusion to evaluate whether it applies in this case. *Id.* That said, Pennsylvania claim preclusion law is similar to federal claim preclusion law, so the Court will also rely on federal cases where appropriate. *See, e.g.*, *Trs. of Gen. Assembly of Lord Jesus Christ of Apostolic Faith, Inc*, 527 F. Supp. 3d at 751 (relying on federal law to determine preclusive effect of Pennsylvania judgment because "Pennsylvania law is similar to federal preclusion law"); *Egli v. Strimel*, 251 F. Supp. 3d 827, 835 n.29 (E.D. Pa. 2017) (outcome of claim preclusion analysis would be the same under Pennsylvania and federal common law).

"Under Pennsylvania law, claim preclusion applies when the previous and instant actions share identity of four conditions: (1) the thing sued upon or for (that is, the issues); (2) the cause of action; (3) the persons and parties to the action; and (4) the quality or capacity of the parties suing or being sued." *M & M Stone*, 2009 WL 3245460, at *8 (citing *In re Iulo*, 766 A.2d 335, 337 (Pa. 2001)). Claim preclusion "applies not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action." *Balent v. City of Wilkes-Barre*, 669 A.2d 309, 313 (Pa. 1995).

"Courts should not apply this conceptual test mechanically, but should focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out of the same occurrence in a single suit." *Churchill v. Star Enters.*, 183 F.3d 184, 194 (3d Cir. 1999) (internal quotations omitted). To that end, "[c]laim preclusion will not be 'defeated by minor differences of form, parties, or allegations, when these are contrived only to obscure the real purpose—a

19

second trial on the same cause between the same parties.'"  *3G Wireless, Inc. v. Metro PCS Pennsylvania LLC*, 15cv6319, 2016 WL 823222, at \*5 (E.D. Pa. Mar. 2, 2016) (quoting *Tobias v. Halifax Twp.*, 28 A.3d 223, 226 (Pa. Commw. Ct. 2011)).

> b.    *Final Judgment on the Merits*

Before reaching the four elements of claim preclusion described above, there must have been a "final judgment on the merits" in the prior litigation.  *Tobias*, 28 A.3d at 226 (citing *R/S Fin. Corp. v. Kovalchick*, 718 A.2d 1228, 1230 (Pa. 1998)).  Plaintiffs argue that because the Commonwealth Court did not reach the merits of their constitutional claims *res judicata* cannot apply.  ECF No. 43 at 7-8.

Plaintiffs are wrong.  The Commonwealth Court decision enforcing the Administrative Order "was certainly 'final,' as it resulted in judgment being entered in favor of Defendants[.]" *See Egli*, 251 F. Supp. 3d at 835.  As Judge Rufe has explained, even "'technical' or 'procedural' rulings arguably unrelated to the 'merits' of a claim are routinely afforded preclusive effect."  *Id.* at 836 (citing *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (dismissal with prejudice for failure to comply with statute of limitations was a final judgment on the merits even though it prevented plaintiff from fully presenting claim); *Fatiregun v. City of Philadelphia*, 09cv601, 2009 WL 3172766, at \*3 (E.D. Pa. 2009) (explaining that "even a 'technical ruling' can be accorded" preclusive effect and finding that dismissal with prejudice on technical grounds was a "final judgment on the merits" for *res judicata* purposes)).

Moreover, as Defendants point out, the only reason the Commonwealth Court did not reach the merits of those claims is due to Plaintiffs' own refusal to appeal to the EHB.  ECF No. 42 at 12 n.9.  Defendants urge that Plaintiffs "should not be rewarded for their obstinate failure to adhere to proper procedure, nor should they be allowed to pick-and-chose what procedure they

prefer." *Id.* The Court agrees. Plaintiffs had a full and fair opportunity to litigate their federal constitutional claims before the EHB (and the Commonwealth Court, had they appealed to the EHB). *See Thompson v. Pennsylvania*, 25cv2780, 2025 WL 3048965, at *3 (E.D. Pa. Oct. 31, 2025) ("An order will serve as a final judgment 'on the merits' when it is entered after [Plaintiffs have] a full and fair opportunity to prove [their] case and fail[] to do so.") (citing *Shah v. United States*, 540 F. App'x 91, 93 (3d Cir. 2013)). They declined to do so based on their own unfounded belief that the entire DEP administrative process is unconstitutional.[1]

The Court therefore finds that the Commonwealth Court ruling was a final decision on the merits for the purposes of claim preclusion. Any other outcome would "encourage precisely the type of piecemeal litigation that *res judicata* is designed to prevent." *See Egli*, 251 F. Supp. 3d at 836.

---

[1] Plaintiffs try to justify their refusal to appeal to the EHB by arguing that "DEP's administrative processes and proceedings were unconstitutional" under *Securities & Exchange Commission v. Jarkesy*, 603 U.S. 109 (2024), so "appealing to EHB was futile." ECF No. 33 at 5; *see also* ECF No. 44 at 8:2-18 (arguing that Plaintiffs did not appeal because "you can't appeal a void order into validity" when the underlying administrative process is "unconstitutional"). *Jarkesy* held that the Seventh Amendment's guarantee of a right to a jury trial applies to agency enforcement proceedings akin to "suits at common law," particularly where the agency imposes civil penalties that are punitive in nature, since this remedy is like those provided by courts of law. 603 U.S. at 133-34.

*Jarkesy* is not controlling here for two reasons. First, under Pennsylvania law, it is well-settled that "the Seventh Amendment jury trial guarantee in civil cases has not been applied to the states by incorporation into the Fourteenth Amendment." *Goldata Computer Servs., Inc. v. Dep't of Banking & Sec.*, 350 A.3d 278, 309 (Pa. Commw. Ct. 2025), *appeal granted in part*, No. 9 EAL 2026, 2026 WL 1890758 (Pa. July 1, 2026). Thus, *Jarkesy*'s holding does not apply to state administrative agencies like DEP. Second, as Defendants point out, no civil penalties were imposed against Plaintiffs by DEP. Plaintiffs claim they would have to incur certain costs to comply with the terms of the Administrative Order. *See* ECF No. 33 at 9. Even assuming Plaintiffs' estimates are accurate, these costs are not "punitive" in nature as they were in *Jarkesy*. *See* 603 U.S. at 133-34. Rather, they simply reflect the costs to bring the Property into compliance with the Commonwealth's laws and regulations. Thus, even if *Jarkesy* applied to state agencies, the central reasoning of that case is inapplicable here.

c.      *Identity of Issues*

"Where the same act or occurrence underlies both actions, the first requirement is satisfied." *M & M Stone*, 2009 WL 3245460, at *8. The same occurrences underlie both the Commonwealth Court enforcement proceedings and this federal action—DEP's investigation into Plaintiffs, Plaintiffs' violations of various Commonwealth laws and regulations, and DEP's issuance of the Administrative Order. *See generally* ECF No. 37 (petition in enforcement proceedings); ECF No. 8 (Amended Complaint in this action).

d.      *Cause of Action*

"Whether causes of action are the same will 'turn on the essential similarity of the underlying events giving rise to the various legal claims[.]'" *M & M Stone*, 2009 WL 3245460, at *8 (quoting *Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 549 (3d Cir. 2006)) (both applying Pennsylvania claim preclusion law). Relevant criteria in this inquiry include "(1) whether the acts complained of; (2) theory of recovery; (3) witnesses and documents; and (4) material facts alleged are the same in both actions." *Id.*

The causes of action Plaintiffs assert in this federal Section 1983 action turn on the same "underlying events" at issue in the enforcement proceedings—DEP's investigation into Plaintiffs, its issuance of the Administrative Order, and Plaintiffs' non-compliance with that Order. *See M & M Stone*, 2009 WL 3245460, at *8. And the claims that Plaintiffs attempted to assert before the Commonwealth Court in their New Matter arise out of the same alleged harms resulting from DEP's issuance of the Administrative Order. *See* ECF No. 27-2 at 11 (outlining similarity in Plaintiffs' New Matter and federal complaint). Resolution of those claims on the merits—had the Commonwealth Court been able to reach them—would have required hearing from the same witnesses (the DEP investigators, Plaintiffs), relying on the same documents

(investigation reports, photographs of Plaintiffs' property), and assessing the same material facts (the nature and extent of Plaintiffs' earth disturbances and their impact on Commonwealth waters). *See M & M Stone*, 2009 WL 3245460, at *8.

The fact that Plaintiffs bring their claims in this action under Section 1983 and allege federal constitutional violations (rather than violations under the Pennsylvania Constitution) is of no import. For purposes of claim preclusion, "cause of action" is "defined broadly in transactional terms." *Gregory v. Chehi*, 843 F.2d 111, 117 (3d Cir. 1988). The "mere advancement of a different legal theory does not necessarily give rise to a different cause of action." *Turner*, 449 F.3d at 549.

e.      *Persons and Parties to the Action*

The persons and parties to this action are the same as in the enforcement proceedings in the Commonwealth Court. *M & M Stone*, 2009 WL 3245460, at *8. DEP was the plaintiff in those proceedings and Plaintiffs were the respondents. *See* ECF No. 37-1.

The Individual Defendants were not parties in the Commonwealth Court proceedings. However, claim preclusion does not require exact identity of all parties to both actions. "Addition of new parties, whether they are plaintiffs or defendants, does not negate the *res judicata* effect of the prior litigation . . . If that was the case, a plaintiff could circumvent the claim preclusion doctrine altogether simply by joining another plaintiff or defendant to the [subsequent] action." *Sheridan v. NGK Metals Corp.*, 06cv5510, 2008 WL 2156718, at *11 (E.D. Pa. May 22, 2008), *aff'd*, 609 F.3d 239 (3d Cir. 2010)); *accord Sims v. Mack Trucks, Inc.*, 463 F. Supp. 1068, 1069 n.1 (E.D. Pa. 1979).

Rather, claim preclusion applies to both the actual parties from the prior suit and those in privity with the actual parties. *Kwansy*, 853 F.3d at 94-95 (applying Pennsylvania law).

"Generally, parties are considered to be in privity if one is vicariously responsible for the conduct of another, such as a principal and an agent." *Perelman v. Adams*, 945 F. Supp. 2d 607, 618 (E.D. Pa. 2013) (citing *Day v. Volkswagenwerk Aktiengesellschaft*, 464 A.2d 1313, 1317 (Pa. Super. 1983)).

Courts in this Circuit applying Pennsylvania law routinely find that individuals employed by state or local agencies were "in privity" with those agencies when the claims arise out of the individuals' job duties. For instance, in *Shareef v. O'Donnell*, the Western District found that *res judicata* barred a suit against individual defendants who were employees of a county prison, even though the individual defendants were not named in the prior litigation. 20cv426, 2020 WL 4677415, at *5 (W.D. Pa. July 14, 2020), *report and recommendation adopted*, No. 20cv426, 2020 WL 4678402 (W.D. Pa. Aug. 12, 2020), *aff'd*, No. CV 20-2935, 2021 WL 2149753 (3d Cir. Apr. 26, 2021). The court emphasized that the individual defendants were employees of the institutional defendant, the county prison, at the time of the alleged conduct giving rise to the claims. *Id.* Thus, the individual defendants were "in privity" with the institutional defendant in the prior suit. *Id.*; *see also, e.g.*, *Regscan, Inc. v. Brewer*, 04cv6043, 2006 WL 401852, at *11 (E.D. Pa. Feb. 17, 2006), *aff'd*, 289 F. App'x 488 (3d Cir. 2008) (rejecting plaintiff's argument that failure to name individual defendants in state court action means no identity of parties, and ruling that individual defendants in federal action were in privity with state court defendant as employees of that defendant); *Spencer v. Courtier*, No. C.A. No. 09-124E, 2011 WL 2670198, at *7 n.5 (W.D. Pa. May 23, 2011) (finding a "close or significant relationship" between defendants who were employees of the Pennsylvania Department of Corrections based on allegation that they "worked in conjunction" with each other to carry out events giving rise to claim).

24

The Court finds that the Individual Defendants are parties in privity with DEP.  Like the individual defendants in *Shareef*, the Individual Defendants here were employees of DEP during the events giving rise to Plaintiffs' claims.  They carried out the investigation into Plaintiffs and the Property under the direction and authority of DEP and in furtherance of DEP's implementation of Commonwealth laws and regulations.  The Individual Defendants were therefore acting as agents of DEP, and DEP was "responsible" for their conduct.  *See Perelman*, 945 F. Supp. 2d at 618 (citing *Day*, 464 A.2d at 1317).  This element of *res judicata* is accordingly satisfied.

f.      <em>Quality/Capacity of the Parties</em>

The final *res judicata* requirement that the parties in the prior and subsequent suit share the same quality and capacity is also satisfied.  Although the Individual Defendants are sued in their individual capacities, *see generally* ECF No. 8, that is not dispositive.  "There is no indication that the Individual Defendants acted outside of their roles as employees during any of the alleged misconduct."  *Regscan*, 2006 WL 401852, at \*12.  Because the Individual Defendants were serving as employees of DEP "during all of the predicate acts alleged" as the bases for their federal claims, "the Court holds that the identity of the capacity of the parties has been established and the fourth prong of the *res judicata* doctrine is satisfied."  *See id.*

**IV.      CONCLUSION**

The Court understands that Plaintiffs are frustrated with the terms of the Administrative Order.  But Plaintiffs are bound by the same rules as every other citizen of the Commonwealth.  Their property rights do not permit them to compromise the safety of public waters.  DEP is immune from suit in federal court for the actions it took to ensure Plaintiffs comply with the environmental laws and regulations of the Commonwealth.  The remaining claims against the

25

Individual Defendants can and should have been asserted before the EHB and Commonwealth Court.  Plaintiffs believed that they could skip adjudication in those local forums.  *Res judicata* provides that they cannot.  This action is therefore dismissed in its entirety.  An appropriate Order follows.

**BY THE COURT:**

MARY KAY COSTELLO
United States District Judge